IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KELVIN E. ROANE,             :
                             :
        Plaintiff,           :
                             :
    v.                       :    Civ. No. 12-231-LPS
                             :
DELAWARE TRANSIT CORPORATION, :
et al.,                      :
                             :
        Defendants.          :

---

Kelvin E. Roane, Bear, Delaware, Pro Se Plaintiff.

Mary Page Bailey, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

March 17, 2015
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Kelvin E. Roane ("Roane" or "Plaintiff") filed this action on February 24, 2012, against Defendants Delaware Transit Corporation ("DTC") and director of human resources Margaret Webb ("Webb") pursuant to Title VII of the Civil Rights act of 1964, as amended, alleging employment discrimination by reason of race and sex. (D.I. 1) Roane amended the complaint on November 1, 2012, adding Defendants paratransit manager M. Kathryn Wilson ("Wilson") and labor relations specialist Richard Siebel ("Siebel") as well as new claims pursuant to 42 U.S.C. § 1983. (D.I. 6) Roane appears *pro se*. Presently before the Court is Defendants' Motion for Summary Judgment. (D.I. 30) Roane did not file an opposition to the motion. For the reasons that follow, the Court will grant the motion.

## II. BACKGROUND

Roane was employed as a paratransit service supervisor for the DTC. DTC received several complaints from female employees of sexual harassment. On December 22, 2008, Roane was warned about an inappropriate conversation with a bus driver when he appeared to seek sexual favors. (D.I. 32 a A001-03) On January 20, 2009, Roane received a letter of warning concerning unprofessional and disrespectful conduct that had occurred on January 15, 2009. (*Id.* at A004)

On April 29, 2009, a white female who was also a paratransit service supervisor, complained that she received an inappropriate text message of a sexual nature from Roane, that he showed her a photograph of a man's penis, and that he asked that she photograph herself and share it with him. (*Id.* at A005) A black female paratransit specialist driver complained that on April 27, 2009, Roane made sexually inappropriate statements and touched her inappropriately. (*Id.* at A006-7)

1

According to Roane, on April 30 2009, Webb called him into her office, advised him that she had been informed he had engaged in inappropriate behavior, took his ID badge, and sent him home. (*Id.* at A016) Roane denied any wrongdoing and considered the allegations false. (*Id.* at A016) Roane unsuccessfully attempted to contact numerous DTC personnel during the next several days to discuss the matter. (*Id.*) Roane was informed by letter that a pre-termination hearing was scheduled for May 11, 2009. (*Id.*)

Webb, Wilson, Siebel, and Charles Moulds ("Moulds"), a transportation manager, were present at the meeting. During the meeting, Roane informed management of alleged actions taken by the fellow female supervisor who had filed a complaint against him. (*Id.* at A017) Roane claimed that he had been sexually harassed and had received inappropriate text messages from her, but he had not made a complaint regarding the alleged conduct. (*Id.* at A017) Roane was terminated effective May 22, 2009 for unprofessional behavior in violation of the DTC's sexual and other unlawful harassment policy. (*Id.* at A014-15) The DTC determined that Roane had knowingly and intentionally created a work environment that was demeaning to another employee which undermined the integrity of the employment relationship. (*Id.*)

Roane filed a charge of discrimination on February 12, 2010, alleging race discrimination and sexual harassment. (D.I. 1 Ex.) He received a right to sue letter dated November 28, 2011, and filed this action on February 24, 2012.

### III. **LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10

(1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252. With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Roane did not file a response to Defendants' motion. The Court, however, will not grant the entry of summary judgment without considering the merits of Defendants' unopposed motion. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that district court should not have granted summary judgment solely on basis that motion for summary judgment was not opposed.).

## IV. DISCUSSION

Roane alleges race discrimination and sexual harassment in violation of 42 U.S.C. § 2000e, *et seq.* He asserts constitutional violations pursuant to 42 U.S.C. § 1983.

Defendants move for summary judgment on the grounds that: (1) Roane failed to state a prima facie case of discrimination; (2) the employer's reason for termination was not based on gender or race but on Roane's actions in violation of the employer's policy; (3) Roane cannot demonstrate that the employer's reason is pre-textual; and (4) the § 1983 claims are time-barred.

4

### A. Title VII

Title VII states that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a). A plaintiff may prove race or gender discrimination by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Here there is no direct evidence of discrimination, so the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Roane must first establish a prima facie case of race discrimination by proving that: (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). The elements of a prima facie case may vary depending on the facts and context of the particular situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

If a plaintiff succeeds in establishing his prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id.* at 142-43. To do this, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely

5

than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (quoting *Fuentes*, 32 F.3d at 764) (internal citations and other citations omitted).

Defendants argue that Roane offered no evidence to support his claims that he was treated differently based upon his gender and race. To make a comparison of his treatment to that of an employee outside his protected class for purposes of a Title VII claim, Roane must show that he and the employee(s) are similarly situated in all relevant respects. *See Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. Dec. 8, 2009) (citations omitted). Whether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case. *See Houston*, 355 F. App'x at 654.

In a severance case, the relevant factors may include the positions held, policies or plans in effect, the decisionmakers, and the timing of the separation. *See id.* at 655 (citing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54-55 (2d Cir. 2001) (plaintiff established she was similarly situated to colleague who received more money in severance where the two employees "held positions of roughly equivalent rank . . . were fired at roughly the same time, [and] the decisions with respect to the severance were both made at the highest levels of the company"). The record reflects that Roane was terminated for several instances of inappropriate conduct, including complaints of inappropriate touching and seeking sexual favors. Roane contends that a female supervisor coworker sent inappropriate emails, but she was not terminated. The Court does not consider the

6

acts taken by Roane and the female supervisor to be similarly situated given there were other numerous complaints made against Roane of a sexual nature, some far more serious than inappropriate texting. The Court finds that Roane has failed to meet his burden to establish a prima facie case of race and gender discrimination.

Assuming arguendo that Roane had established a prima facie case of discrimination, Defendants have provided legitimate, nondiscriminatory reasons for the DTC's decisions to terminate Roane. The evidence and documentation indicates that Roane was terminated based upon allegations from two separate employees of inappropriate conduct of a sexual nature in violation of DTC polices.

There is nothing before the Court that contradicts the proffered reason for Roane's termination. Nor are Defendants' proffered reasons for the actions taken weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Sarullo v. United States Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003). Construing the evidence in the light most favorable to Roane, he has not provided evidence from which a fact finder could either disbelieve Defendants' articulated reasons, or believe that a discriminatory reason was more likely than not the cause of the employment actions.

In addition, no reasonable jury could find for Roane to the extent that he alleges the proffered reason for his termination is pretextual. The record reflects that it was not until his pre-termination hearing that Roane ever advised the DTC of the alleged harassment by his co-worker. Nor is there any evidence of record that Roane filed a complaint regarding the alleged harassment regarding the inappropriate texts.

Accordingly, the Court will grant Defendants' Motion for Summary Judgment on the Title VII claims.

7

## B. 42 U.S.C. § 1983

The amended complaint, filed November 1, 2012, raises § 1983 claims for the first time. Defendants move for summary judgment on the grounds that the claims are time-barred.

Roane's claims all arose during May 2009. "Limitations periods in 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.'" *Hardin v. Straub*, 490 U.S. 536, 541 (1989) (citing *Board of Regents, University of New York v. Tomanio*, 446 U.S. 478, 484 (1980)). However, accrual of such claims are governed by federal law. *See Albright v. Oliver*, 510 U.S. 266, 280 n.6 (1994). The relevant state statute of limitations for a personal injury action in Delaware is two years. *See* 10 Del. C. § 8119. Roane's claims accrued when he knew or had reason to know of the injury that forms the basis of this action. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 1386 (3d Cir. 1994).

The claims accrued in May 2009, yet Roane did not file his complaint until February 2012, and he did not at that time raise any § 1983 claims. The amended complaint filed in November 2012 added § 1983 claims. The § 1983 claims are time-barred as having been filed more than two years from May 2009. Therefore, the Court will grant Defendants' Motion for Summary Judgment as the § 1983 claims are time-barred.

## V. CONCLUSION

For the above reasons, the Court will grant Defendants' Motion for Summary Judgment (D.I. 30).

An appropriate Order follows.

8